IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
RICHARD D. PHOENIX,          }
                             }
     Plaintiff,              }     CIVIL ACTION NO.
                             }     02-AR-3053-S
v.                           }
                             }
CITY OF BIRMINGHAM,          }
                             }
     Defendant.              }
                             }
```

FILED
04 APR 28 AM 10:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 28 2004

### MEMORANDUM OPINION

Before the court is the motion of defendant, the City of Birmingham ("Birmingham"), for summary judgment. Plaintiff, Richard D. Phoenix ("Phoenix"), claims that Birmingham denied him the position of "station manager"[1] of its 1st Avenue vehicle maintenance facility and forced him to resign because of his race and age. Birmingham seeks summary judgment on all of Phoenix' claims.

### Summary-Judgment Facts

The Personnel Board of Jefferson County ("JCPB") coordinates hiring for civil-service positions in Jefferson County, Alabama. Birmingham, municipality located in Jefferson County, hired Phoenix, a black male more than 40 years old, in 1993 as an

---

[1] Although Phoenix contends in his responsive brief that he "complains that he was denied promotion to leadman," (Doc. #21 at 1), his complaint specifies that his suit is based on Birmingham's failure to promote him to "station manager." (Doc. #1 at ¶8 & 12). Phoenix has never requested leave to amend his complaint to change this allegation.



"automotive service technician" through JCPB. Phoenix was assigned to the 8th Avenue Service Center ("8th ASC"). The 8th ASC performed approximately three preventive-maintenance jobs, like oil changes, daily. Although he was the only employee assigned to the 8th ASC, he was not the "station manager," because no such position existed. Jerry Brooks, a white male more than 40 years old who was stationed at the 6th Avenue Service Center ("6th ASC"), was Phoenix' immediate supervisor.

In July 2001, Birmingham officials condemned the building housing the 8th ASC. At that time, Birmingham had already planned to build a new facility, the 1st Avenue Service Center ("1st ASC"), which would be completed by the end of the year. In the meantime, Phoenix was reassigned to the 6th ASC with Brooks continuing as his immediate supervisor.

Unlike the 8th ASC, the 1st ASC would be a full-service facility. In addition to providing preventive maintenance, the 1st ASC would replace alternators and water pumps on Birmingham's vehicles. Part of the expanded scope of services for the 1st ASC included providing more services to police vehicles. To accomplish this, the 1st ASC would adjoin the headquarters of the Birmingham Police Department.

Birmingham's mobile equipment manager, George Robert Rainey, a white male more than 40 years old, assembled a committee of supervisors to evaluate the operation needs of the 1st ASC. It

was decided that at least two employees were needed to staff the 1st ASC. Phoenix and William Hohman, a white male more than 40 years old, were selected. However, Brooks was concerned that Phoenix would not be able to meet the pace that would be required at the new facility.

Rainey informed Hohman and Phoenix that they had been selected to staff the 1st ASC. Rainey told Phoenix not to worry that he was slower than a 30-year-old man, because older people are "unable to do things like [they] used to." Rainey continued, "I am confident that you can make this [the 1st ASC assignment] happen for me." Rainey's clear meaning in this pep talk was that he thought Phoenix could perform the work at the 1st ASC. Rainey also told Phoenix that Hohman, because of his seniority (Hohman had been working for Birmingham since 1984), his broader mechanical ability, and his ability to fabricate unique parts for police vehicles, would be the "leadman." However, Hohman would not have been Phoenix' supervisor. In fact, both Hohman and Phoenix would continue to have the same classification under the JCPB -- automotive service technician. Hohman did not receive any additional compensation due to his designation as "leadman."

Phoenix told Rainey that he was unwilling to work with Hohman. Phoenix had observed Hohman work from July 2001 through February 2002, and Phoenix felt that Hohman spent a "substantial amount of his time walking around." Rainey proposed that Phoenix

could continue working at the 6th ASC. A week later, Phoenix sent Rainey a resignation letter.

### Standard of Review

Rule 56, F.R.Civ.P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding a summary-judgment motion, the court must view all the evidence and any reasonable factual inferences in the light most favorable to the nonmoving party. *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1310 (11th Cir. 2002). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial with regard to those dispositive matters for which it carries the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Accordingly, viewing evidence in the light most favorable to the nonmoving party, does not mean that the court is constrained to accept all of nonmovant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). The nonmovant is given the benefit of every *reasonable* inference, not every metaphysical doubt. *Brown v. City of Clewiston*, 848 F.2d 1534,

1540 n.12 (11th Cir. 1988).

**Analysis**

The familiar analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), is properly used when the plaintiff attempts to prove his claim through circumstantial evidence. *Bell v. Birmingham Linen Serv.,* 715 F.2d 1552, 1556 (11th Cir. 1983). However, a *prima facie* case of discrimination may also be proven by direct evidence of age or race discrimination. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527 (11th Cir. 1997). Such evidence, if believed, proves the existence of a fact in issue without inference or presumption. *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 n.13 (11th Cir. 1988). In opposing Birmingham's motion, Phoenix contends that he has direct evidence of age discrimination and has established a *prima facie* case of race discrimination under the *McDonnell Douglas* framework.

The direct evidence Phoenix cites is Rainey's observation that when people get older they are unable perform exactly as they had when they were younger. This comment obviously relates only to Phoenix' claim of age discrimination. Rainey made this comment while assuring Phoenix that his performance at the 1st ASC would be satisfactory. The Eleventh Circuit has stated that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification]" are

direct evidence of discrimination. *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (internal quotation marks omitted). Although this statement evidences the stereotypical view that older workers are unable to perform as well as their younger peers, it cannot be said to evidence an intent to discriminate against older workers. Phoenix does not dispute that Rainey's statement was meant as an assurance. Nor is there any dispute that Rainey hired an individual in Phoenix' protected class for the position, Hohman. Rainey's statement is a far cry from the type of blatant remark necessary to rise to the level of direct evidence of an intent to discriminate against a protected class. *Compare Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1322-23 (11th Cir. 1998) (holding that defendant's statements that "You black girls make me sick, sometimes I feel like just hitting you in the head"; "You black girls get away with everything"; and "You black girls make me sick"; did not constitute direct evidence) *with Caban-Wheeler v. Elsea*, 904 F.2d 1549 (11th Cir. 1990) (holding statement by decision-maker that the program needed a black director was direct evidence of discrimination). Therefore, Phoenix has not produced any direct evidence of age discrimination, and Birmingham's motion will be granted as to Phoenix claim of age discrimination.[2]

---

[2] Phoenix makes no attempt to prove a circumstantial case of age discrimination under the *McDonnell Douglas* framework.

Even if Phoenix had produced direct evidence of age or race discrimination, he must also establish the existence of an actual promotion opportunity. *Howard v. Lear Corp. Eeds & Interiors*, 234 F.3d 1002, 1006 (7th Cir. 2000); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997) (holding plaintiff failed to establish *prima facie* case where position that she claimed entitlement to did not exist). As the Eleventh Circuit has noted, "[r]equiring a plaintiff to demonstrate that he or she unsuccessfully applied for a job **necessarily implies** that the plaintiff must demonstrate there was a job available for which the employer was seeking applications." *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1238 n.19 (11th Cir. 2000). Phoenix has not created a genuine issue of fact that the position of "station manager" ever existed. In fact, he concedes that no such position existed, but now contends that he was denied promotion to the position of "leadman." Accordingly, Birmingham's motion for summary judgment on Phoenix' claim that he was denied promotion to "station manager" based on his age and race will be granted.

To the extent that Phoenix has not waived his failure-to-promote claim as to the "leadman" position, summary judgment for Birmingham is still appropriate. Phoenix acknowledges that one element of his *prima facie* case is that he suffered an adverse employment action. This element requires a "*serious and material change in the terms and conditions or privileges of employment.*"

*Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis original). It is undisputed that the position of "leadman" resulted in no change in classification nor a change in pay. The "leadman" did not even have a supervisory role over the other worker. Phoenix' subjective feeling that he was slighted when he was denied promotion to "leadman" does not create a serious and material change in the terms and conditions of his employment. This court is not a super-personnel department meant to alleviate every complaint an employee has about the way an employer structures its business. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *Denny v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001); *Chapman v. AI Transport*, 229 F.3d 1012, 1031 (11th Cir. 2000) (en banc). Summary judgment is appropriate on Phoenix' complaint that he was denied promotion to "leadman."

Birmingham also seeks summary judgment on Phoenix' claim for constructive discharge. A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997) (quotation marks and citation omitted); *see also Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (affirming summary judgment for the defendant where plaintiff's constructive discharge claim was

based solely on negative comments regarding medically necessary absences and a smaller raise than that received by other employees). Birmingham contends that Phoenix voluntarily resigned. Phoenix does not dispute this in his responsive brief. In fact, he does not address this issue in his brief. Accordingly, Phoenix' claim for constructive discharge has been waived. Summary judgment for Birmingham on this issue will also be granted.

### Conclusion

The court will grant Birmingham's motion by separate order. DONE this 28 day of April, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE